**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

NOTORIAN QUEYARN JONES

    Plaintiff,

vs.

                            Civil Action No.4:26-CV-038

TRANSX LTD AND JASPRETT
SINGH

    Defendants.

## MOTION FOR RECUSAL OF THE HONORABLE R. STAN BAKER AND MEMORANDUM OF LAW IN SUPPORT PURSUANT TO 28 U.S.C. §§ 144 and 455

The undersigned, Pierre Ifill and counsel for the Plaintiff, moves for the recusal of the Honorable R. Stan Baker from presiding over any further proceedings in this matter pursuant to 28 U.S.C. §§ 144 and 455. Mr. Ifill further requests that, consistent with 28 U.S.C. § 144 and this Court's usual practice, this motion be referred to another district judge for determination, and that the Court grant such other and further relief as it deems just and proper to maintain public confidence in the impartial administration of justice and to avoid any appearance of impropriety or bias, including as to race. This request is grounded, inter alia, in Chief Judge Baker's prior referral of undersigned counsel to the State Bar of Georgia arising out of related criminal and forfeiture proceedings, in which he expressly acknowledged that he had not formally found that Mr. Ifill committed any wrongdoing while

nonetheless setting out extensive criticism of counsel's conduct, fee practices, and business operations, his decision to convene a more-than-two-hour show-cause/evidentiary hearing after Attorney Ifill and the United States had already reached a stipulated disgorgement agreement, and his dissemination of the referral letter and its supporting materials to multiple third-party lawyers and parties beyond Bar counsel. These circumstances, including the manner in which the hearing was conducted and then used as the predicate for a detailed Bar complaint, create at a minimum an appearance of personal and racial bias that requires recusal to ensure and preserve public confidence in the impartial administration of justice.

## STATEMENT OF FACTS

This civil action is assigned to the Honorable Chief Judge R. Stan Baker, and Plaintiff is represented by undersigned counsel, Attorney Pierre Ifill. The grounds for this motion arise from Judge Baker's prior actions and statements in a separate criminal and forfeiture proceeding, *United States v. Kinchen, et al.*, Case No. 4:22-cr-114 (S.D. Ga.), and the related civil forfeiture case, which creates an appearance of partiality.

On July 24, 2024, Chief Judge Baker sent a letter to the General Counsel of the State Bar of Georgia pursuant to Canon 3(B)(6) of the Code of Conduct for United States Judges concerning undersigned counsel, Mr. Ifill, who had appeared before Judge Baker as defense counsel and as a forfeiture respondent in the *Kinchen*

matter. In that letter, Judge Baker stated that he was relaying "reliable information indicating the likelihood that… a lawyer violated applicable rules of professional conduct," while expressly acknowledging that he had not formally found that Mr. Ifill had committed any wrongdoing, and he framed the submission as a referral of concerns for the Bar's independent evaluation. The letter focuses on Mr. Ifill's and his client Dennis Kinchen's purchase, transfer, and sale of a condominium property that the Government alleged was purchased with fraudulently obtained SBA loan proceeds, and for which Mr. Kinchen ultimately pleaded guilty to wire fraud and money laundering.

Judge Baker's letter sets out, in detail, his concerns that the condominium and the proceeds from its sale were treated as fees to undersigned counsel and then deposited into Mr. Ifill's law firm operating account, where they were allegedly commingled with other funds and spent, rather than held in trust, even after the Government asserted that the property and proceeds were forfeitable. Among other things, the letter raises questions about: (a) whether undersigned counsel failed to safeguard and account for funds in which the United States and others claimed an interest; (b) whether he converted or otherwise misapplied funds after learning of the Government's forfeiture claim; (c) whether he failed to safeguard and account for any interests of his then-client and a third party in the sale proceeds; (d) whether he converted unearned portions of any advance fee payment; (e) whether his fee and

retainer arrangements, and the acquisition and sale of the condominium, complied with Rules 1.5 and 1.8 of the Georgia Rules of Professional Conduct; and (f) whether he continued to represent Mr. Kinchen after a conflict of interest arose and after Mr. Kinchen had discharged him. Judge Baker framed these issues as questions and concerns to be evaluated by the Bar and explicitly acknowledged that he had made no formal findings of wrongdoing as to Mr. Ifill but stated that he nonetheless felt "obligated to relay" the facts to disciplinary authorities.

Notably, at no point did Mr. Kinchen himself file a grievance with the State Bar of Georgia or make a formal complaint of misconduct against undersigned counsel, nor did the Government file any Bar complaint. The only referral to disciplinary authorities arising from these events was initiated by Chief Judge Baker sua sponte, based on his own inaccurate assessment of Mr. Ifill's conduct in the *Kinchen* proceedings.

In support of these concerns, Judge Baker described and attached records reflecting specific expenditures from the Ifill Law Group's operating account following the condominium sale, which he contrasted against Mr. Ifill's claimed fee and expense ledger for the representation. The letter repeatedly questions the legitimacy and amount of the fees Mr. Ifill claimed to have earned from the representation in light of the timing and amount of the condominium transfer and the sale proceeds.

Judge Baker also recounted that, in the course of the *Kinchen* proceedings, he entered a restraining order as to the condominium sale proceeds, directed Mr. Ifill and his firm to remit those proceeds or account for them, and subsequently conducted a show-cause hearing at which a stipulated disgorgement agreement between undersigned counsel and the United States, by which Mr. Ifill agreed to disgorge $306,579.89 in sale proceeds pursuant to a payment schedule, was presented to the Court for approval and ultimately approved. According to the docket materials summarized in the July 24, 2024, letter, the hearing on June 21, 2024, lasted more than two hours and went forward even though the parties had already negotiated and executed the stipulated disgorgement agreement. The Government did not present live witnesses at that hearing and relied primarily on financial records and argument already before the Court, while Judge Baker used the proceeding to probe broadly into Mr. Ifill's business practices, trust-account handling, and fee arrangements far beyond what was necessary to sign off on the parties' agreement. The Court's questioning and commentary effectively developed an "alternative" narrative of events that was later incorporated into the Bar-grievance letter. In a footnote to his July 24, 2024, letter Judge Baker stated that the Court "retains jurisdiction in this case over a disgorgement agreement between Mr. Ifill and the United States," but that "[t]o avoid any appearance of impropriety," he was recusing himself from the *Kinchen* case, and he expressly reiterated in the body of the letter that he had not formally found that Mr. Ifill committed any wrongdoing. It is upon

information and belief, based on the timing and content of the June 21, 2024, hearing and the following 50-page referral, that the primary, if not sole purpose of convening that extended evidentiary proceeding after the parties had already reached a disgorgement agreement was to generate a record for the Bar complaint that Judge Baker was contemplating against Attorney Ifill.

Although addressed to Bar counsel as a Canon 3(B)(6) referral, Judge Baker's July 24, 2024, letter was copied to multiple third-party lawyers and parties involved in the *Kinchen*-related proceedings, including counsel for the United States, Mr. Kinchen, Ms. Somesso, Ms. Wilson, and Colony Bank, as reflected in the "cc" list on the letter. These copied recipients were participants in the underlying forfeiture litigation and were not acting as disciplinary officials or Bar counsel. As a result, the detailed narrative of alleged professional-conduct concerns regarding Mr. Ifill, together with the attached financial and case materials, was disseminated beyond disciplinary authorities to other litigants and attorneys. Judge Baker's conduct of sharing his confidential bar grievance information with third-party lawyers who were not authorized recipients of such disciplinary materials is a direct appearance-of-partiality concern raised in this motion.

Furthermore, the forfeiture proceedings arising from the same Peachtree condominium transaction also included two additional ancillary civil forfeiture matters concerning Colony Bank's asserted interest in the certificate of deposit used

as collateral and purchaser Twyla Wilson's interest in the property, which were pursued through petitions in the criminal forfeiture context. It is understood that those proceedings, the Colony Bank and Wilson ancillary matters, were handled under seal or with a substantially greater degree of sealing or confidentiality than the Ifill-related show-cause and disgorgement proceedings and Judge Baker's detailed narrative regarding undersigned counsel in the July 24, 2024, letter, which were not placed under seal. It is quite clear that this disparate treatment in the handling and confidentiality of closely related forfeiture issues, combined with the fact that Judge Baker personally chose to preside over and publicly conduct the Ifill-focused show-cause hearing and to author and circulate a lengthy, unsealed Bar-referral letter directed at the undersigned, further substantiates a bias against Mr. Ifill.

Additionally, on June 5, 2025, Bar-Counsel for Mr. Ifill, Attorney Shawn McCullers, sent an email to counsel for the State Bar of Georgia responding to Chief Judge Baker's July 24, 2024, letter. In this communication, as part of articulating Mr. Ifill's concerns to Bar counsel, Mr. McCullers characterized Judge Baker's referral as an "unusually personal 50-page complaint" and expressed the view that "we should be able to practice and not have personal attacks on our character by sitting Judiciary, who have demonstrated an animus toward us for whatever their reasoning is." He further asserted that Judge Baker "ran with his own 50 page narrative" based on "only supposition," and that the June 21, 2024, show-cause

hearing preceding the referral, held after Attorney Ifill and the United States had already negotiated a stipulated disgorgement agreement, was "improperly conducted in an effort to try to find justification to file this 50 page complaint to the bar," concluding that, in his view, Judge Baker's actions were "violative of several judicial canons" and raising concerns about the lack of sealing or confidential treatment afforded to the Ifill-related proceedings as compared to related forfeiture matters.

Mr. Ifill further believes that racial bias may be a contributing factor in how Judge Baker has handled issues involving Mr. Ifill. The racially and personally adverse actions toward counsel, including the public, unsealed handling of the Ifill-focused proceedings and referral contrasted with the more confidential treatment afforded to institutional parties, reinforce his concern that Judge Baker's continued assignment to this case creates, at a minimum, an appearance that his impartiality may reasonably be questioned under 28 U.S.C. §§ 144 and 455.

## ARGUMENT & CITATION OF AUTHORITIES

### 1.  LEGAL STANDARDS GOVERNING RECUSAL

The disqualification of a federal judge is governed principally by 28 U.S.C. §§ 144 and 455, together with the Due Process Clause of the Fifth Amendment as applied to the federal courts. The Eleventh Circuit reviews a district court's denial of a motion to recuse for abuse of discretion and has held that §§ 144 and 455 are to be construed in pari materia. *United States v. Alabama*, 828 F.2d 1532, 1540–42

(11th Cir. 1987); *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009).

Under 28 U.S.C. § 144, a judge must be disqualified if a party files a "timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of an adverse party," accompanied by a certificate of counsel stating that the affidavit is made in good faith. 28 U.S.C. § 144. The judge's role on such a motion is limited to determining the legal sufficiency of the affidavit, not resolving the truth of the factual allegations. *United States v. Alabama*, 828 F.2d at 1540–41. An affidavit is legally sufficient if: (1) the alleged facts are material and stated with particularity; (2) the facts, if true, would convince a reasonable person that a bias exists; and (3) the facts show that the bias is personal, as opposed to judicial, in nature. *Id.* at 1541 (discussing and adopting the test articulated in *Parrish v. Bd. of Comm'rs of Ala. State Bar*). In assessing whether such a showing has been made under §§ 144 and 455, courts may consider extra-judicial conduct by the judge - including, for example, the initiation and handling of disciplinary referrals against counsel, the convening of evidentiary or show-cause proceedings that appear to go beyond what is necessary to resolve the parties' live dispute, and the manner in which any resulting referral materials are disseminated, as part of the overall context bearing on personal bias and the appearance of partiality.

Similarly, 28 U.S.C. § 455 requires a judge to self-disqualify under specified circumstances. Section 455(a) mandates disqualification "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The Eleventh Circuit applies an objective test under § 455(a): whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)). Section 455(b)(1) further provides that a judge shall disqualify himself where he "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," a ground that overlaps with the "personal bias or prejudice" standard in § 144. 28 U.S.C. § 455(b)(1); *Cintron v. United States,* 401 F. App'x 495 (11th Cir. 2010*)*.

In applying these statutory standards, the Supreme Court has explained that, as a general matter, alleged bias must arise from an extra-judicial source, and that judicial opinions formed in the course of proceedings warrant recusal only if they reveal such "deep-seated favoritism or antagonism" as to make fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994); *Ray*, 327 F. App'x at 825.

Generally, federal courts, including the Eleventh Circuit, have emphasized that to warrant disqualification the alleged bias must stem from extra-judicial sources rather than from ordinary judicial rulings or case management. *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009); *Cintron v. United States*, 401 F. App'x 495, 498-99 (11th Cir. 2010). In *Liteky v. United States*, the Supreme Court explained that opinions formed by a judge during current or prior proceedings ordinarily do not constitute a basis for recusal "unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible," and that judicial remarks that are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," nor do adverse rulings alone. 510 U.S. 540, 555 (1994); see also *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1362–64 (Fed. Cir. 2002) (applying *Liteky* outside the recusal context). By contrast, actions a judge takes outside the ordinary course of adjudicating a case, such as initiating or advocating for professional discipline against an attorney, including the preparation and dissemination of disciplinary referral materials, as alleged here with respect to Chief Judge Baker's lengthy Canon 3(B)(6) referral letter concerning undersigned counsel and its distribution to multiple third-party lawyers and parties, are properly evaluated as extra-judicial conduct for purposes of §§ 144 and 455.

The Due Process Clause also sets an independent, constitutional floor for recusal. In *Caperton v. A.T. Massey Coal Co.*, the Supreme Court held that, under all the circumstances, due process requires recusal when "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." 556 U.S. 868, 872, 877 (2009). The Court emphasized that the Due Process Clause "demarks only the outer boundaries of judicial disqualifications," and that most questions of disqualification are resolved under statutes and codes of judicial conduct that may impose more rigorous standards. *Id.* at 889-90. Thus, constitutional compulsion to recuse arises only in the "rare instances" where the appearance and risk of bias are extreme, but § 455 may call for recusal in a broader set of circumstances. In assessing whether such a constitutionally intolerable probability of bias exists, courts may consider, among other things, circumstances in which a judge has assumed a role akin to a complaining witness or advocate in collateral disciplinary or related proceedings involving counsel, including, as alleged here, by convening an extended evidentiary hearing after Attorney Ifill and the United States had executed a stipulated disgorgement agreement and then using the resulting record as the basis for a detailed disciplinary referral concerning counsel, or has otherwise engaged in extra-judicial conduct that bears directly on counsel's credibility and professional standing.

Procedurally, 28 U.S.C. § 144 contemplates that once a party files a timely and sufficient affidavit alleging personal bias or prejudice, the judge whose recusal is sought is limited to determining the legal sufficiency of the affidavit; if the facts alleged, taken as true, are such that they would convince a reasonable person that a personal, extra-judicial bias exists, the motion must be passed to another judge for decision. *United States v. Alabama*, 828 F.2d 1532, 1540–43 (11th Cir. 1987). Georgia courts follow a similar approach in requiring reassignment of recusal motions supported by affidavits that are timely and legally sufficient, reflecting the broader principle that questions about a judge's own impartiality should ordinarily be resolved by another judicial officer. See, e.g., *A & M Hosps. v. Alimchandani*, 871 S.E.2d 290, 297-99 (Ga. Ct. App. 2022). Where, as here, the supporting affidavit relies on extra-judicial actions such as a judge's initiation and dissemination of a detailed disciplinary referral concerning counsel, those actions fall within the category of conduct that, under §§ 144 and 455, should be evaluated by a different judicial officer.

## 2.  ARGUMENT

Judge Baker's impartiality in this matter might reasonably be questioned, requiring recusal under 28 U.S.C. §§ 144 and 455, and, alternatively, under the Due Process Clause. Judge Baker convened a more-than-two-hour show-cause hearing on June 21, 2024, even though undersigned counsel and the United States had

already executed a written Stipulated Disgorgement Agreement resolving the Peachtree condominium sale proceeds, and the Government, from Plaintiff's and undersigned's perspective, presented no live witnesses and relied on financial records and arguments already before the Court while the Court extensively questioned Mr. Ifill's business practices, trust-account handling, and use of law-firm funds. Shortly thereafter, Judge Baker issued a lengthy Canon 3(B)(6) referral to the State Bar of Georgia regarding Mr. Ifill, expressly stating that he had not formally found any wrongdoing but nonetheless set out a detailed disciplinary narrative and analysis of potential violations of multiple Georgia Rules of Professional Conduct, based substantially on the record developed at that hearing, and disseminated that referral and its supporting materials to multiple third-party lawyers and parties who were not disciplinary authorities, while, as undersigned understands those proceedings, related forfeiture matters involving Colony Bank and purchaser Twyla Wilson arising from the same transaction were handled with greater sealing or confidentiality than the Ifill-focused show-cause, disgorgement, and referral materials.

For a Black plaintiff and his Black counsel, these circumstances, including the extended post-agreement evidentiary hearing, the exhaustive Bar referral and its dissemination, the disparate confidentiality treatment, and Judge Baker's subsequent recusal from the Kinchen matter "to avoid any appearance of impropriety" while

stating that the Court "retains jurisdiction" over the disgorgement agreement, collectively create an appearance of racially disparate and personally adverse treatment such that an objective observer could perceive a deep-seated antagonism toward counsel and reasonably question the Court's ability to fairly adjudicate Plaintiff's case.

**A. Judge Baker's Impartiality Might Reasonably Be Questioned Under 28 U.S.C. § 455(a).**

Section 455(a) requires disqualification where a judge's "impartiality might reasonably be questioned." The standard is objective and asks whether a fully informed, disinterested observer would harbor a "significant doubt about the judge's impartiality." *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825–26 (11th Cir. 2009) (quoting *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988)); *Cintron v. United States*, 401 F. App'x 495, 498 (11th Cir. 2010).

Applying that standard here, an objective observer would consider the combination of: (1) the more-than-two-hour June 21, 2024 show-cause/evidentiary hearing convened after Attorney Ifill and the United States had executed a stipulated disgorgement agreement regarding the Peachtree condominium sale proceeds; (2) Judge Baker's subsequent 50-page Canon 3(B)(6) referral to the State Bar of Georgia, which recounted the facts of the condominium transaction, analyzed financial records, identified numerous potential violations of the Georgia Rules of

Professional Conduct, and expressly stated that he felt "obligated to relay" those concerns to disciplinary authorities, even while acknowledging that he had made no formal findings of wrongdoing; and (3) his decision to circulate that detailed disciplinary narrative and its exhibits to multiple third-party lawyers and parties identified in the letter's "cc" list, rather than limiting it to Bar counsel.

Taken together, the length and tone of the referral, its focus on Attorney Ifill's integrity and professional fitness, and its dissemination beyond disciplinary authorities present, in substance, an adversarial presentation of alleged misconduct directed at Plaintiff's counsel. An objective observer, fully apprised of this history, including that Judge Baker recused himself from Kinchen "to avoid any appearance of impropriety" while the Court retained jurisdiction over the disgorgement agreement, could reasonably question whether the same judge can now fairly and dispassionately assess that attorney's credibility and advocacy on behalf of a different client in this civil action. Particularly from the perspective of a Black litigant and his Black counsel, who perceive the extended post-agreement hearing, the public, unsealed handling of the Ifill-focused proceedings, and the more confidential treatment of related forfeiture matters involving institutional parties as racially disparate and personally adverse, these circumstances create, at minimum, an appearance that Judge Baker's impartiality "might reasonably be questioned" under § 455(a).

**B. The Facts Support Recusal for Personal Bias Under 28 U.S.C. §§ 144 and 455(b)(1).**

Recusal is also warranted for personal bias under both §144 and §455(b)(1). A legally sufficient affidavit under §144 must allege material facts, stated with particularity, that, if true, would convince a reasonable person that a personal, extra-judicial bias exists, and must show that the alleged bias is personal rather than judicial in nature. *United States v. Alabama*, 828 F.2d 1532, 1540–41 (11th Cir. 1987). The same substantive standard for "personal bias or prejudice" informs §455(b)(1). *Cintron v. United States*, 401 F. App'x 495, 498–99 (11th Cir. 2010).

Here, Mr. Ifill's affidavit and this motion identify specific extra-judicial actions by Judge Baker that go well beyond ordinary rulings or case management in Kinchen: convening a more-than-two-hour show-cause/evidentiary hearing after Attorney Ifill and the United States had executed a stipulated disgorgement agreement; using that hearing to examine Mr. Ifill's business practices, trust-account handling, use of firm funds, and fee arrangements; then preparing and transmitting a detailed 50-page Canon 3(B)(6) Bar-referral letter that analyzes Mr. Ifill's financial records, identifies a broad array of potential rule violations, and questions his handling of client and third-party funds, all while expressly acknowledging that no formal findings of wrongdoing had been made. Judge Baker also chose to circulate

that disciplinary narrative and its supporting exhibits to multiple third-party lawyers and parties, rather than confining it to Bar counsel or placing it under seal.

The appearance that the Court, rather than any party or client, chose to initiate disciplinary proceedings against Mr. Ifill, where neither Mr. Kinchen nor the Government lodged a Bar complaint, reinforces the perception that Judge Baker has assumed an adversarial role toward counsel that is personal and extra-judicial rather than merely the product of ordinary case management. These actions, taken together, depict Judge Baker not merely as a neutral adjudicator who issued adverse rulings, but as a complaining witness who has already formed and advanced a strongly negative view of Plaintiff's counsel's integrity and professional fitness based on information he developed and marshaled outside the context of this civil case. Under §§144 and 455(b)(1), a reasonable person could conclude that such a judge harbors a personal, extra-judicial bias or prejudice concerning counsel whose credibility and advocacy will be central to Plaintiff's case, and that recusal is therefore required.

## C. Due Process Requires Recusal Under the Standard in *Caperton*.

The Due Process Clause of the Fifth Amendment sets an independent, constitutional floor for judicial disqualification. Even where statutory standards might not compel recusal in every instance, due process requires it when, under all the circumstances, the "probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton v. A.T. Massey*

*Coal Co.*, 556 U.S. 868, 872, 877, 889-90 (2009). The focus is on structural risk: whether the judge's role or conduct has moved beyond ordinary judicial decision-making into a position that is effectively adverse to a party or counsel.

Here, Judge Baker did not confine himself to adjudicating the Kinchen proceedings in the usual way. After Attorney Ifill and the United States had negotiated and executed a written Stipulated Disgorgement Agreement resolving the disposition of the Peachtree condominium sale proceeds, Judge Baker nonetheless convened a more-than-two-hour show-cause/evidentiary hearing that, as described above, focused heavily on Mr. Ifill's business practices, trust-account handling, use of law-firm funds, and fee arrangements rather than on any live dispute about the agreed-upon disgorgement. He then used the record developed in that hearing to prepare and transmit a detailed, 50-page Canon 3(B)(6) referral to the State Bar of Georgia, analyzing Attorney Ifill's financial records, identifying a wide array of potential rule violations, and questioning his handling of client and third-party funds, while expressly acknowledging that he had made no formal findings of wrongdoing.

In addition, the two related ancillary civil forfeiture matters were handled under seal or with materially greater confidentiality than the Ifill-focused show-cause and disgorgement proceedings and the Court's detailed narrative concerning undersigned counsel's conduct, which remained unsealed and publicly

accessible. Plaintiff and undersigned view this disparate treatment in sealing and confidentiality between closely related matters as further evidence of structurally differential treatment of undersigned compared to other entities involved in the same underlying transaction, and, for Plaintiff Jones and his Black counsel, as contributing to their belief that they have been subjected to harsher and more public treatment than non-Black institutional parties arising from the same events, reinforcing their perception that the Court's stance toward undersigned is personally adverse rather than even-handed.

Attorney Shawn McCullers, who represented Mr. Ifill in the Bar matter, articulated the same concerns in his June 5, 2025 email to Bar counsel, describing Judge Baker's submission as an "unusually personal" "50 page complaint," objecting to what he viewed as "personal attacks" on counsel's character by a sitting judge, and stating his belief that the June 21, 2024, show-cause hearing had been conducted "to try to find justification to file this 50 page complaint to the bar." While those are counsel's characterizations and not findings of fact, they underscore how a reasonable attorney in the undersigned's position has experienced the extended evidentiary hearing, the tone and scope of the referral, and the public dissemination of the resulting disciplinary narrative to other lawyers and parties.

Taken together, these circumstances reflect more than strong views formed in the ordinary course of adjudication. They depict a judge who has assumed a role

akin to that of a complaining witness and advocate in collateral disciplinary proceedings directed at Plaintiff's counsel, has treated counsel's matter more publicly and less confidentially than closely related institutional forfeiture matters, and has generated a detailed, public disciplinary narrative about that counsel's integrity and professional fitness. Under *Caperton*, an objective observer could conclude that the resulting risk that these prior, extra-judicial conclusions will influence, or will reasonably appear to influence, the Court's evaluation of Attorney Ifill's credibility and advocacy on behalf of Plaintiff is too high to be constitutionally tolerable. Due process, therefore, provides an additional, independent basis for recusal, even apart from the requirements of 28 U.S.C. §§144 and 455.

## CONCLUSION

WHEREFORE, for all of these reasons above, Mr. Ifill respectfully submits that recusal is required. The specific extra-judicial actions identified here, including the June 21, 2024 post-agreement evidentiary hearing focused on Attorney Ifill's professional conduct, the ensuing 50-page Canon 3(B)(6) Bar-referral letter despite the absence of formal findings of wrongdoing, its dissemination to multiple third-party lawyers and parties, and the more public, less confidential treatment of the Ifill-focused proceedings as compared to closely related institutional forfeiture matters, would cause a fully informed, objective observer to harbor a significant doubt about Judge Baker's impartiality. Those same facts, as set forth in Plaintiff's

affidavit, demonstrate personal, extra-judicial bias or prejudice within the meaning of 28 U.S.C. §§ 144 and 455(b)(1), and, at a minimum, create a constitutionally intolerable risk that prior, adverse assessments of counsel's integrity will influence, or reasonably appear to influence, the Court's evaluation of Plaintiff's case, in violation of the Due Process Clause.

Plaintiff therefore respectfully requests that 1) this motion be referred to another district judge for decision; 2) that Chief Judge Baker be recused from further participation in this matter; 3) in the event the judge assigned to decide this motion determines that it is necessary to resolve any factual disputes concerning the grounds for recusal, Mr. Ifill requests an evidentiary hearing at which testimony and other evidence may be presented, including, as necessary, evidence regarding the July 24, 2024 Bar-referral letter, the stipulated disgorgement agreement, the June 21, 2024 show-cause/evidentiary hearing, the handling and dissemination of those matters, the treatment of related forfeiture proceedings, and the alleged disparate and racially biased treatment forming the basis of this motion; 4) Plaintiff and undersigned counsel further request that all proceedings on the merits in this matter be stayed pending a final determination of this motion. In the alternative, Plaintiff and undersigned counsel request that the case be temporarily reassigned to another judge for case-management purposes while this motion is under consideration; and 5)

and that the Court grant such other and further relief as it deems just and proper to preserve public confidence in the impartial administration of justice.

This 20th day of April 2026

**HURDLE IFILL & ASSOCIATES**

*/s/ Pierre Ifill, Esq.*
Pierre Ifill, Esq.
Georgia Bar No. 236187
*Counsel for Plaintiff*

1100 Eagles Landing Pkwy Ste. A
Stockbridge, Georgia 30281
Telephone: (404) 564-5312
Email: pifill@theifilllawgroup.com
Facsimile: (404) 855-4131

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION**

NOTORIAN QUEYARN JONES

    Plaintiff,

vs.

                                Civil Action No.4:26-CV-038

TRANSX LTD AND JASPRETT
SINGH

    Defendants.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th  day of April, 2026, I electronically filed the foregoing PLAINTIFF'S MOTION FOR RECUSAL OF THE HONORABLE R. STAN BAKER AND MEMORANDUM OF LAW IN SUPPORT with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all counsel of record.

                                        **HURDLE IFILL & ASSOCIATES**

                                        */s/ Pierre Ifill, Esq.*
                                        Pierre Ifill, Esq.
                                        Georgia Bar No. 236187
                                        *Counsel for Plaintiff*

1100 Eagles Landing Pkwy Ste. A
Stockbridge, Georgia 30281
Telephone: (404) 564-5312
Email: pifill@theifilllawgroup.com
Facsimile: (404) 855-4131