# In the United States District Court for the Southern District of Georgia Savannah Division

| | |
|---|---|
| NOTORIAN QUEYARN JONES,<br><br>Plaintiff,<br><br>v.<br><br>TRANSX LTD and JASPRETT SINGH,<br><br>Defendants. | CV 426-038 |

## ORDER

Before the Court is a motion for recusal filed by Pierre Ifill, counsel for Plaintiff ("Counsel"), who seeks to disqualify Chief Judge R. Stan Baker from presiding over this proceeding. Dkt. No. 14. The motion was referred to the undersigned for a decision. Dkt. No. 15. For the reasons set forth below, Counsel's motion for recusal, dkt. no. 14, is **DENIED.**

## BACKGROUND

Counsel previously appeared before Chief Judge Baker in a criminal matter, United States v. Kinchen, No. 4:22cr114 (S.D. Ga.), where he served as defense counsel, and a related civil forfeiture case, where he served as counsel for the defendant property. Dkt. No. 14 at 2. While these cases were pending, Counsel and his client, Mr. Kinchen, purchased, transferred, and sold a condominium property that the Government alleged was

purchased with fraudulently obtained Economic Injury Disaster Loan proceeds. See id. at 3. Chief Judge Baker entered a restraining order as to the condominium sale proceeds, directed Counsel and his firm to remit those proceeds or account for them, and conducted a show-cause hearing at which a stipulated disgorgement agreement between Counsel and the United States was presented to the Court for approval. Id. at 5. According to Counsel, the evidentiary hearing lasted more than two hours. Id. Counsel surmises that Chief Judge Baker "used the proceeding to probe broadly into [Counsel's] business practices, trust-account handling, and fee arrangements far beyond what was necessary to sign off on the parties' agreement." Id.

After the hearing, Chief Judge Baker sent a letter to the General Counsel of the State Bar of Georgia concerning Counsel. Id. In the letter, Chief Judge Baker expressed his concerns that the condominium and proceeds from its sale were treated as fees to Counsel and then deposited into Counsel's law firm operating account, where they were allegedly commingled with other funds and spent, rather than held in trust, even after the Government asserted that the property and proceeds were forfeitable. Id. at 3. Chief Judge Baker expressly noted that he had not formally found that Counsel had committed wrongdoing. Id. at 5. Counsel further notes that the "letter was copied to multiple third-party lawyers and parties involved in the Kinchen-related proceedings." Id. at 6.

Chief Judge Baker ultimately approved the disgorgement agreement. See id. at 5. To "avoid any appearance of impropriety," however, Chief Judge Baker recused himself from Mr. Kinchen's criminal case. Id.

Over one year after these events, Counsel was retained by Notorian Jones, Plaintiff in this unrelated civil insurance contract case. Plaintiff initiated this action in the State Court of Bryan County, Georgia, dkt. no. 1-1, and Defendants removed the case to this Court, dkt. no. 1. Chief Judge Baker was assigned as the presiding judge. Shortly after removal, Counsel filed the instant motion to recuse (or disqualify) Chief Judge Baker from presiding over this matter. Dkt. No. 14.

**DISCUSSION**

Counsel moves to disqualify Chief Judge Baker under both 28 U.S.C. § 144 and § 455. Dkt. No. 14.

**I. Section 144**

Under Section 144,

> [w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. Section 144 further requires that the affidavit "state the facts and the reasons for the belief that bias or prejudice exists."

Disqualification under Section 144 "requires 'personal bias or prejudice' against a party." Davis v. Bd. of School Comm'rs of Mobile Cnty., 517 F.2d 1044, 1050 (5th Cir. 1975).[1] Here, no bias or prejudice personal to Plaintiff is put forth. See, e.g., Dkt. No. 14 at 7 (alleging "bias against [Counsel]"); id. at 8 (alleging "adverse actions toward counsel"); id. at 16 (alleging "an adversarial presentation of alleged misconduct directed at [Counsel]"). Counsel's motion is devoid of any evidence that Chief Judge Baker has any bias whatsoever *against a party* in this case. In fact, Counsel alleges only that Chief Judge Baker is biased against *Counsel*, not Counsel's client. Therefore, Counsel's motion is, in substance, a "lawyer motion" as distinguished from a "party motion," and any claim of imputed bias against a party—here, Plaintiff—is far too attenuated to require disqualification under Section 144. Davis, 517 F.2d at 1051.

Ordinarily, this conclusion would end the Court's Section 144 analysis. For the sake of thoroughness, however, the Court will explore Counsel's arguments in favor of disqualifying Chief Judge Baker from presiding over this proceeding. In his motion, Counsel argues three main points: (1) Chief Judge Baker's primary "purpose of convening th[e] extended evidentiary

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

proceeding after the parties had already reached a disgorgement agreement was to generate a record for the Bar complaint that Judge Baker was contemplating against [Counsel]," dkt. no. 14 at 6; (2) Chief Judge Baker's "conduct of sharing his confidential bar grievance information with third-party lawyers who were not authorized recipients of such disciplinary materials is a direct appearance-of-partiality concern," id.; and (3) Chief Judge Baker's "disparate treatment" in the handling of closely-related forfeiture issues in the same case "substantiates a bias against [Counsel]," id. at 7. In addition to these points, Counsel "further believes that racial bias may be a contributing factor in how Judge Baker has handled issues involving [Counsel]." Id. at 8.

First, to attempt a showing of bias, Counsel points to the length and depth of the show-cause evidentiary proceeding in the forfeiture matter. Counsel asserts that Chief Judge Baker "convened a more-than-two-hour show-cause hearing . . . , even though [Counsel] and the United States had already executed a written Stipulated Disgorgement Agreement resolving the [] condominium sale proceeds, and the Government . . . presented no live witnesses and relied on financial records and arguments already before the Court while the Court extensively questioned [Counsel]'s business practices, trust-account handling, and use of law-firm funds." Dkt. No. 14 at 13-14.

As a threshold matter, the record belies the claim. The official transcript reflects that the hearing began at 10:15 a.m. and concluded at 11:33 a.m., and a recess was taken from 11:02 to 11:22 a.m. United States v. Kinchen, No. 4:22cr114, Dkt. No. 265 at 3, 30, 39. Therefore, in total, the hearing lasted less than one hour, not over two hours, as Counsel contends. Furthermore, the hearing was an *evidentiary* hearing in which Counsel was ordered to show cause why he should not be held in contempt of the Court's Final Order of Forfeiture for failing to remit the proceeds from the sale of the condominium or failing to provide an accounting. See id., Dkt. Nos. 227, 229. Chief Judge Baker's inquiry into Counsel's "business practices, trust-account handling, and use of law-firm funds" is relevant to the purpose of the hearing. Counsel appears to suggest that Chief Judge Baker should not have inquired into these matters simply because Counsel and the Government had already reached a disgorgement agreement. But Counsel cites no authority for the proposition that the Court should accept such an agreement without further inquiry, particularly where the agreement provides that Counsel would make periodic disgorgement payments rather than a lump sum payment. See id., Dkt. No. 261 ¶ 3; see also 21 U.S.C. § 853(g) (permitting the Court, in the forfeiture context, to "take any other action to protect the interest of the United States in the property ordered forfeited"). Counsel's belief that Chief Judge Baker conducted

a hearing simply to tee-up a letter to the State Bar regarding Counsel's conduct is simultaneously unsupported and illogical. In sum, there is insufficient evidence to show anything but a thorough hearing on the part of Chief Judge Baker.

Second, Counsel points to Chief Judge Baker's letter to the Bar. Dkt. No. 14 at 6. The fact that a judge refers a lawyer to a bar association's grievance committee does not require him to recuse himself from future hearings or cases. See Honneus v. United States, 425 F. Supp. 164, 166 (D. Mass. 1977) (noting "that the fact that a judge sat upon an attorney's disciplinary proceedings for unethical conduct in connection with a case[] did not require him to recuse himself from sitting on the subsequent bank robbery trial of the attorney's client in the same case"); see also id. (holding that "adverse rulings do not establish bias or prejudice," nor do they "create a question as to judicial impartiality"). The Court's own *Guide to Judiciary Policy* states that "[a] judge's findings of unprofessional conduct by an attorney appearing before the judge and forwarding same to the state disciplinary counsel does not by itself mandate disqualification, provided the judge feels he or she can treat the attorney impartially." Guide to Judiciary Policy, Opinion No. 66, Vol. 2B, Ch. 3, at 100. In the Order referring Counsel's motion to the undersigned, Chief Judge Baker states that he "harbors no bias, prejudice, or ill will towards Plaintiff or Plaintiff's counsel and knows of no reason why he

could not impartially preside over this case." Dkt. No. 15 at 1 n.1.

It is important to recall that federal judges are required by the Code of Conduct for United States Judges to inform the State Bar when they have reason to believe an attorney has violated State Bar rules. Canon 3(B)(6) of the Code provides, in relevant part, that "[a] judge should take appropriate action upon receipt of reliable information indicating the likelihood that . . . a lawyer violated applicable rules of professional conduct." Handling money appropriately is one such rule. See State Bar of Georgia, Rule 1.15(II) Safekeeping Property – Trust Account and Iolta, https://www.gabar.org/handbook/?rule=rule45.

Moreover, "[i]t is settled that the requisite basis of bias and prejudice under § 144 must be extra-judicial." Davis, 517 F.2d at 1051 (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)). The letter from Chief Judge Baker to the State Bar "was very much judicial," considering Chief Judge Baker was acting in accordance with Canon 3(B)(6). See id.

Finally, that Chief Judge Baker copied the Bar letter to lawyers and parties in the Kinchen-related proceedings does not diminish the judicial nature of the letter. Counsel's allegations of bias based on others being copied on the letter are, at most, speculative.

For his third argument, a "disparate treatment" comparison claim, Counsel points to "the public, unsealed handling of the

[Counsel]-focused proceedings and [State Bar] referral contrasted with the more confidential treatment afforded to institutional parties." Dkt. No. 14 at 8. That is, Counsel argues the "related forfeiture matters involving Colony Bank[2] and purchaser Twyla Wilson[3] arising from the same [condominium] transaction were handled with greater sealing or confidentiality than the [Counsel]-focused show-cause, disgorgement, and referral materials." Id. at 14. Counsel's argument is both misguided and meritless. In the criminal case, the Colony Bank and Twyla Wilson "ancillary" proceedings, dkt. no. 14 at 7, involved no such hearings. As for the civil forfeiture proceeding involving the condominium, that case was reassigned from Chief Judge Baker to another judge three months after it was initiated and *before* any substantive hearings took place. See United States v. 2734 Peachtree Rd. N.W., Unit #C202 Atlanta, GA 30305, No. 4:22cv64 (S.D. Ga.), Dkt. No. 10. Therefore, Chief Judge Baker could not have handled those matters "with greater sealing or confidentiality" as Counsel alleges. Further, the record is devoid of any evidence that Colony Bank or Twyla Wilson exhibited any conduct analogous to Counsel's with regard to the EIDL funds, so Counsel's

[2] Colony Bank held one of Kinchen's business accounts to which EIDL funds were wired; Kinchen also purchased a CD at Colony Bank with such funds. Case No. 4:22cr114, Dkt. No. 219 at 2.

[3] Twyla Wilson is the third-party purchaser to whom Counsel sold the condominium. Case No. 4:22cr114, Dkt. No. 219 at 3.

allegations of disparate treatment are unsupported, if not wholly undercut by the record.

Finally, the Court reaches Counsel's perception of racial bias. Any allegation of racial bias is wholly unsubstantiated. Even Counsel concedes such allegations are based on mere "perceptions" or "beliefs" on his part. See, e.g., Dkt. No. 14 at 8 (stating that Counsel "*believes* that racial bias may be a contributing factor in how Judge Baker has handled issues involving [Counsel]" (emphasis added)); id. at 16 (stating the "Black litigant and his Black counsel . . . *perceive*" Judge Baker's actions "as racially disparate and personally adverse" (emphasis added)). Such unsupported speculation forms no basis for recusal under 28 U.S.C. § 144.

To conclude, Counsel may be dissatisfied with the length of time the hearing took and its consequences. However, no grounds for recusal under 28 U.S.C. § 144 exist. Accordingly, Counsel's motion to disqualify Chief Judge Baker pursuant to § 144 is **DENIED.**

## II. Section 455

Counsel also requests that Chief Judge Baker be disqualified based on 28 U.S.C. § 455. Section 455 requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455. But unlike Section 144, Section 455 also requires disqualification in five specific contexts, one of which Counsel

references in his motion: a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1); see also Dkt. No. 14 at 10 (citing § 455(b)(1)). As discussed supra, the Court finds no hint of bias or prejudice or lack of impartiality on Chief Judge Baker's part against Plaintiff, or any other party. Further, the Court finds no bias or prejudice or lack of impartiality against Counsel. Accordingly, Counsel's motion for recusal based on 28 U.S.C. § 455 is **DENIED.**[4]

**CONCLUSION**

Because Counsel has not met the requirements for judicial disqualification under either 28 U.S.C. § 144 or § 455, his motion for recusal, dkt. no. 14, is **DENIED**. Judge Baker's impartiality is not reasonably questioned. This matter shall proceed, as it was originally assigned, before Chief Judge Baker.

**SO ORDERED**, this 14th day of August, 2026.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

[4] To the extent Counsel asserts a Fifth Amendment due process violation, that claim is also foreclosed by the finding of no bias, prejudice, or lack of impartiality on Chief Judge Baker's part.